**UNITED STATES, Appellee,**

v.

**Hugh K. WINTER, Airman U.S. Air Force, Appellant.**

**No. 66,573.**
**ACM 28660.**

U.S. Court of Military Appeals.

Argued March 4, 1992.

Decided Aug. 28, 1992.

For Appellant: *Robert G. Peterson* (argued); *Colonel Jeffrey R. Owens* and *Captain Michael D. Burt*.

For Appellee: *Captain David C. Wesley* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief); *Major Paul H. Blackwell, Jr.*

## Opinion of the Court

COX, Judge:

We are asked to decide whether a military judge erred by proceeding with a bench trial after rejecting an accused's proffered guilty pleas. We find no error and affirm.

Appellant was charged with the unpremeditated murder of his 7–week–old baby son.[1] Art. 118, Uniform Code of Military Justice, 10 USC § 918. He elected to be tried by a military judge alone and entered pleas of not guilty to the murder charge; but by exceptions and substitutions, he also entered pleas of guilty to the lesser-included offense of involuntary manslaughter. Art. 119, UCMJ, 10 USC § 919. Notwithstanding appellant's pleas, trial counsel gave notice of intent to prosecute appellant on the murder charge.

The military judge then conducted an inquiry into the providence of appellant's guilty pleas to the lesser offense. *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969); RCM 910(e), Manual for Courts–Martial, United States, 1984. However, appellant failed to satisfactorily complete the inquiry.[2] Accordingly, the judge rejected the guilty pleas, entered pleas of not guilty for appellant, and proceeded immediately to trial. Art. 45(a), UCMJ, 10 USC § 845(a).

The judge warned government counsel not to use any information elicited during the providence inquiry, except for impeachment purposes. *See United States v. Holt*, 27 MJ 57 (CMA 1988). The trial proceeded without objections by either party, and appellant was convicted as charged.[3]

Appellant now contends that the military judge should have disqualified himself, *sua sponte*, because of his exposure to admissions which established every element of the *charged* offense except the intent to kill or inflict great bodily harm. Para. 43b(2)(d), Part IV, Manual, *supra*. Appellant contends that such knowledge rendered the judge unable to act as a neutral and detached finder of fact. We do not agree.

When an accused pleads guilty, he must "be questioned under oath" as to the accuracy of his pleas. *United States v. Care, supra; RCM 910(e). Should such questioning raise a "potential defense," the judge must explain this defense and reject the pleas if the defense is not negated.* See *RCM 910(e), Discussion. Thereafter, the judge will enter pleas of not guilty, and the Government will again bear the burden of proving beyond a reasonable*

---

1. Evidence presented at trial indicated the infant's death resulted from what is commonly referred to as "Shaken Infant Syndrome" (the shaking of a small child to the point that injury results). During the providence inquiry, appellant admitted he had shaken the baby to try to end constant crying brought on by two maladies—colic and thrush, both of which caused the baby considerable discomfort. At trial, a forensic pathologist concluded that the baby had been shaken and that action led to injuries which were the cause of death. An autopsy revealed injury to the infant's brain, several minor bruises to the head and scalp, retinal hemorrhages, and optic-nerve-sheath damage.

2. Specifically, the military judge questioned the accused as follows:

   MJ: Shaking a baby playfully, playing with a baby and watching them smile and whatever, that is the proper parental role and in this respect, a touching would not be unlawful. A touching is only unlawful when the force applied is done without legal justification or excuse. That is to say, do you believe that the application of force by you, if it was in the extreme, was done without legal justification or excuse and was beyond this allowable parental touching?

   ACC: At the time, sir, no, but after looking back on it, yes, I would say so now.

   The judge believed that appellant had not admitted the wrongfulness of the touching, stemming from the assault on the infant. *See* para. 44b(2)(c) and (d), Part IV, Manual for Courts–Martial, United States, 1984.

3. Appellant was sentenced to a dishonorable discharge, confinement for 12 years, total forfeitures, and reduction to airman basic. The sentence was approved by the convening authority, and the Court of Military Review affirmed the findings and the sentence. 32 MJ 901 (1991).

*doubt the offenses for which the not-guilty pleas were entered.*

In the present case, the steps detailed above were followed. The military judge rejected appellant's guilty pleas and entered not-guilty pleas on appellant's behalf. Then, the Government proceeded to prove that appellant murdered his baby son. Nevertheless, on appeal appellant asserts that, after rejecting the pleas, the judge should have disqualified himself or convened a panel of members to try appellant.

■ Clearly, "personal bias" on the part of a judge calls for that judge's recusal. *United States v. Jarvis*, 22 USCMA 260, 262, 46 CMR 260, 262 (1973); *see also* Canon 3.C.(1)(a), ABA Code of Judicial Conduct (1989 edition) ("A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . ."). However, "generally there is no restriction on the military judge alone" trying a case where the judge has found guilty pleas improvident. *United States v. Hodges*, 22 USCMA 506, 507, 47 CMR 923, 924 (1973). There is no *per se* rule that military judges are disqualified

whenever, after accepting guilty pleas, they must later reject those pleas based on unforeseen circumstances. Even more so, there is no invariable requirement that judges *sua sponte* recuse themselves in all such cases. *United States v. Hodges, supra; United States v. Kauffman*, 3 MJ 794 (ACMR 1977). *See also United States v. Thomas*, 7 MJ 299 (CMA 1979); *cf. United States v. Collins*, 6 MJ 256 (CMA 1979).[4]

■ We acknowledge, however, that even though a judge is not *per se* disqualified from presiding over a bench trial after rejecting guilty pleas, the facts of a particular case may still require recusal of the military judge, especially if the judge has formed an intractable opinion as to the guilt of the accused. *Cf. United States v. Bradley*, 7 MJ 332 (CMA 1979). Fundamental legal principles require judges to decide cases based on evidence presented at trial.[5]

Appellant contends that, in this instance, the judge heard too much during the guilty-plea inquiry; that as a rational human being, the judge must have reached certain conclusions and formed opinions about the case; and that, to insure fairness and eliminate any appearance of impropriety, the judge should have recused himself

4. Further, we do not presume that defense counsel was incompetent in failing to object. Indeed, the record of trial reflects that defense counsel tactically intended and sought to keep the assigned military judge. In support, we note that suspicions about the military judge arose not from defense counsel, but rather from trial counsel. Trial counsel knew the military judge had recently presided over another "baby shaking case." During trial counsel's voir dire of the judge, it was further established that the same defense counsel (Major Burr) served in both cases. The judge confirmed this and also elaborated about his willingness, if requested, to submit a letter of clemency for the accused in that case. Therefore, one could conclude that defense counsel knew he had a favorable forum in which to present a defense.

5. The United States Court of Appeals for the District of Columbia wrote specifically about the dichotomy and strains placed on a trial judge as follows:

The District Judge is presumed to have a trained and disciplined judicial intellect, which in a nonjury trial can receive evidence, rule on its admissibility, and discard from his eventual decision on the merits that evidence which he has ruled to be inadmissible for the purposes of his decision. . . .

However, that same court also warned:

The disciplined judicial mind should not be subjected to any unnecessary strain; even the most austere intellect has a subconscious.

*United States v. Walker*, 473 F.2d 136, 138 (D.C.Cir.1972). The strain placed on the minds of jurists is not lightly passed over. We also acknowledge, per the Court of Military Review's opinion, the strain placed on military judges and civilian trial judges in general. As the Court of Military Review noted in its decision below, trial judges have "bathtub minds," or "the ability to fill their heads with the facts immediately necessary, then pull the plug and scour away all recollection of the previous matter, before refilling for a new situation." 32 MJ at 903, *citing* Mayer, "Justice, The Law and the Lawyer," *Saturday Evening Post* at 37 (February 26, 1966).

or at least convened a panel to try the case. *United States v. Cockerell,* 49 CMR 567 (ACMR 1974), *pet. denied,* 23 USCMA 640 (1975); *cf. United States v. Sherrod,* 26 MJ 30 (CMA 1988). We do not agree.

First and foremost, it was by his own request that appellant was tried by military judge alone. Art. 16(1)(B), UCMJ, 10 USC § 816(1)(B). Moreover, trial counsel had placed defense counsel, the accused, and the military judge on notice that he intended to prosecute the accused for the offense of murder. Thus, the evidence received by the military judge at trial was no greater or lesser than what he would have received if he had accepted the proffered pleas to involuntary manslaughter and the Government had proceeded with the trial on the murder charge. Indeed, it can be argued that appellant was in a better situation because the military judge rejected his pleas based on a possible defense. In any event, this military judge was not disqualified because of his participation in the guilty-plea inquiry.

▆▆▆ Appellant also contends that even if the judge was not disqualified he should have impaneled a court-martial of members. Because we have concluded that the military judge was not disqualified, this was certainly an option available to him, but not a requirement. *See United States v. Sherrod, supra* at 33.[6] Both the United States Army and Air Force Courts of Military Review have considered whether a *per se* rule should be established to govern those instances where an accused has attempted to plead guilty but the pleas have been rejected; yet neither court has done so. *See United States v. Cockerell, supra;* and *United States v. Melton,* 1 MJ 528 (AFCMR 1975), *pet. denied,* 2 MJ 159 (1976).

The Army Court of Military Review invited an accused to challenge the military judge for cause if the accused believes that the judge has formed any opinion of guilt based upon the information he gained in the providence inquiry. *United States v. Cockerell, supra* at 573. Indeed, that court required the judge to "recuse himself ... if he has any doubt as to his ability to render justice to either side." *Id.* Lastly, that court expressed a preference for having the military judge recuse himself unless the accused expressly consents to having him continue as the military judge. *Id.* at 574.

The Air Force Court of Military Review viewed the situation as less critical and declined an invitation by appellate defense counsel to adopt the Army's more formalistic approach. However, the bottom line remains the same. Senior Judge Roberts stated:

> [W]e believe that the matter of recusal ... is best left to the independent judgment of the military judge involved. There may be, of course, cases in which factual admissions made during the plea providence inquiry, or the compelling nature of evidence presented prior to any withdrawal of the plea, are such as to impel the judge to be convinced of the accused's guilt and mentally unable to make an impartial decision. If that is the case, it is for him to decide whether the better course of action would be to remove himself from further participation. Similarly, he may conclude that he might properly conduct the trial but that in the interest of fairness and impartiality, the accused should be permitted to withdraw his request for trial by military judge alone. In the alternative the judge may, on his own motion, direct that the case be tried before a military jury. *United States v. Cockerell, supra; United States v. Bryant,* 23 USCMA 326, 49 CMR 660 (1975).

---

6. There is one lingering question, that is: should the military judge be required, as a matter of law, to ask the accused whether he or she desires to continue to be tried by military judge alone after the military judge rejects an accused's plea? Art. 16(1)(B), Uniform Code of Military Justice, 10 USC § 816(1)(B); RCM 903, Manual, *supra.* While this is clearly the preferred practice, we also mention that nothing prevented defense counsel from requesting this relief. *See* n. 4, *supra.* Therefore, we decline at this time to hold that the failure of a military judge to discuss this option with an accused constitutes reversible error.

*United States v. Melton, supra* at 530–31. This view of the law comports with our own. *See United States v. Sherrod, supra* at 33.

We are satisfied that this appellant received a fair and impartial trial and that the findings were based upon legally competent evidence of record.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.