Ralph L. CLARK, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–749.

District of Columbia Court of Appeals.

Submitted June 12, 2012.

Decided June 14, 2012.

William T. Morrison appointed by the court, for appellant.

Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, John P. Mannarino, Leslie Ann Gerardo and April E. Fearnley, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

Ralph L. Clark, Jr. has asked this court to vacate his ten-year prison sentence for armed robbery and related weapons and other offenses on the grounds that the government breached its plea agreement with him by requesting that he be sentenced to serve twenty years in prison when it had agreed not to allocute for more than ten years. The government acknowledges that such a breach initially occurred, and we agree with Clark that the violation was serious and inexcusable. The trial judge, however, noted the breach at the sentencing hearing, and she brought it to counsel's attention at the outset of the proceedings. At the judge's suggestion, the prosecutor withdrew the sentencing memorandum which contained the improper recommendation. Clark's attorney made no objection to the manner in which the judge dealt with the issue. Indeed,

she agreed to the judge's actions and did not object to the prosecutor's oral allocution. Accordingly, we affirm.

## I.

On April 28, 2010, Clark, while pretending to be an undercover officer, committed an armed robbery at Starbucks at the Howard University bookstore. He was promptly apprehended, and on March 24, 2011, he accepted the government's written plea offer.[1] The offer provided, *inter alia*, that "[a]lthough the [g]overnment reserves the right to allocute at [Clark's] sentence in this case, *it agrees not to allocute for a sentence greater than 10 years incarceration.*" (Emphasis added.) The government also agreed to dismiss several of the charges against Clark. In return Clark agreed to plead guilty to one count of armed robbery and to two additional offenses. Clark also executed a written "Plea Agreement and Waiver of Trial," in which he represented that after consulting with counsel, he had decided to plead guilty in this case and to "give up my constitutional right to have a trial and to give up my right to appeal." On March 25, 2011, the trial judge held a plea hearing in conformity with Super. Ct.Crim. R. 11, and Clark formally entered his guilty plea in accordance with the terms of the written plea agreement.

Clark's sentencing was scheduled for June 8, 2011. On June 7, the government filed a 3¼ page Memorandum in Aid of Sentencing. Three times in that brief memorandum—once in the introductory paragraph, once in the "Argument," and once in the Conclusion—the government recommended that Clark be sentenced to twenty years of incarceration. In the sen-

---

1. Throughout the proceedings, the government was represented by Assistant United States Attorney April E. Fearnley.

**1268**

tencing memorandum, government counsel made no allusion to the contrary terms of the written plea agreement.

On the following day, the trial judge began the hearing with the observation that she had been "surprised," upon receiving the government's Memorandum in Aid of Sentencing, "to see [the government] asking for a sentence twice what they capped their allocution at." The prosecutor acknowledged that she had made an "error," and she stated that she had forgotten that there was a "cap" involved in the plea. The judge, apparently skeptical, pointed out that the applicable portion of the plea agreement was in boldface type. The prosecutor agreed that the request for a sentence of twenty years was "off the table," and the parties then engaged in the following colloquy:

> Ms. Cobb (defense counsel): Your Honor, I don't know how the court wants to proceed. I didn't have a chance to talk to Mr. Clark about this. I don't know if the [g]overnment needs to actually submit another letter because I think that they've submitted a letter vigorously arguing for a sentence that's in violation of the plea agreement and I think for them to just say—
> The Court: Well, did you file it or did you just submit it to chambers?
> Ms. Fearnley: No, I think it was filed as well yesterday.
>
> \* \* \*
>
> The Court: You're just concerned because you think that the Bureau of Prisons or CSOSA somewhere would get a copy of it and—
> Ms. Cobb: I'm concerned about that. I'm concerned [about] that and obviously the [c]ourt is not bound by any allocution, but I think to the extent

that the [g]overnment filed a letter for the [c]ourt vigorously arguing for a sentence that violates the plea agreement that they should submit to the [c]ourt and file in the jacket another letter in which they retract that and indicate that they're vigorously arguing for the sentence that they agreed that they would.

The judge observed that "everyone's ready for a sentencing today," and she thought that it would be "sufficient with the confession of error that we have if Ms. Fearnley files an amended document and we vacate the other one."[2] She also advised counsel that

> I will let you know that I prepared for this with in my mind what the [g]overnment had agreed to ask for as kind of the background information that I was focused on and as it turns out, the [g]overnment's memorandum in aid [of sentencing] was I think the last thing I read and when I read that, I immediately noted the error....

The judge expressed the view that there was not "much to be gained" by delaying sentencing to await the government's submission of an amended sentencing memorandum, and defense counsel responded: "As long as the record is corrected, Your Honor."

The judge then heard the allocution of both attorneys as to what sentence she should impose. The prosecutor discussed the seriousness of Clark's crime as well as what she accurately described as his "extremely serious and violent criminal history," and she concluded by stating that in the government's view, "*a ten-year sentence is very generous in this case.*" (Emphasis added.) Clark's counsel requested a measure of leniency, but she interposed no objection to the prosecutor's argument.

---

2. The Amended Memorandum was filed on the following day.

After giving Clark an opportunity to be heard, the judge sentenced him, in effect, to imprisonment for ten years, a sentence which was consistent with the prosecutor's obligations under the plea agreement.

On June 15, 2011, Clark filed, *pro se,* a handwritten document entitled "Notice of Appeal." In spite of this heading, the document began with the salutation "Dear Honorable Judge Ann O'Keary," and Clark asked Judge Keary, *inter alia,* "for immediate relief under appeal" from his plea of guilty because "the U.S. Attorney's Office has blatantly breached the initial plea agreement." Clark then stated that "I do in sound mind appeal" the "unjust and harsh[ ] sentence that was handed down by this court ... at my sentencing dated 6–8–2011." Both parties appear to agree (albeit without discussing the point) that by submitting this document, although apparently asking for relief from the trial judge, Clark had filed a timely notice of appeal, and we will so assume for purposes of this opinion.[3]

## II.

Clark contends that the prosecutor violated the plea agreement by recommending a twenty-year sentence after she had promised to cap her allocution at ten years. He further asserts that even after this recommendation was withdrawn following the judge's intervention, the prosecutor compounded the effects of the initial breach by arguing that a ten-year sentence would be "very generous."[4] He asks this court to order that Clark's sentence be vacated and that Clark be resentenced by a different judge, and he argues that if his new sentence exceeds ten years, Clark should be permitted to withdraw his plea. Clark does not address in his brief the fact that these contentions are being presented for the first time on appeal.[5]

We agree with Clark that the prosecutor's breach in her sentencing memorandum of the promise not to allocute for a sentence of more than ten years was both grave and inexcusable. If, as the prosecutor claimed, she had simply "forgotten" about this aspect of the agreement, her failure to recollect this detail (if, indeed, she viewed it as a mere detail) could have resulted—indeed, it was intended to result—in Clark's being incarcerated for ten more years than he would probably have served if the government had kept its promise. This is an imperfect world, and even well-intentioned people make mistakes, but this error had potentially devas-

---

**3.** As we have previously noted, Clark's plea agreement included an unqualified waiver of his right to appeal. No explicit exception was made for an appeal from an illegal sentence or for a sentence allegedly secured by improper means. *Cf. Stewart v. United States,* 37 A.3d 870, 873 (D.C.2012). The government has not claimed, however, that Clark is barred by his plea agreement from prosecuting this appeal, and we do not explore the issue further.

**4.** Clark also complains that at least in the context of the government's prior breach of the plea agreement, the prosecutor again violated that agreement by referring in her allocution to Clark's "extremely serious and violent criminal history." This description of

Clark's prior record is, however, incontestably accurate, and the prosecutor's reference to it was altogether legitimate.

**5.** Clark appears to contend that his claims have been preserved because his counsel objected to the recommendation in the prosecutor's sentencing memorandum. While this is true—counsel agreed with the judge's comment that the memorandum was a breach of the agreement—the issue on appeal is whether the measures taken by the judge were sufficient *to remedy that violation.* Clark did not object at all in the trial court to the judge's actions, *i.e.,* her retention of the case and her direction that the prosecutor file a new sentencing memorandum consistent with the plea agreement.

tating consequences, and it is not to be readily excused.

Moreover, although the prosecutor withdrew her request for a twenty-year sentence (but only after the judge brought the problem to counsel's attention), her subsequent allocution was anything but an emphatic retreat from the impropriety. Indeed, as we have noted, the prosecutor told the judge that in the government's view, a ten-year sentence would be "very generous" to Clark. The government's agreement not to allocute for a sentence in excess of ten years was not, of course, binding on the court, and the judge could readily have discerned from the prosecutor's allocution that she—and thus the government—would not have been at all unhappy if a sentence longer than ten years had been imposed.[6] The demands of fairness required something better from the government than a blatant breach of the plea agreement followed by the prosecutor's implied dissatisfaction with that agreement during the course of her allocution.

The practical consequences of the prosecutor's breach may not have been easy to dissipate. To quote Judge Gewin's memorable articulation in *Dunn v. United States,* 307 F.2d 883, 886 (5th Cir.1962), "[o]ne cannot unring a bell; after the thrust of the saber it is difficult to say forget the wound; and finally, if you throw a skunk into the jury box, you can't instruct the jury not to smell it." *See also Thompson v. United States,* 546 A.2d 414, 425 (D.C.1988) (quoting *Dunn* ) (internal quotation marks omitted). "Stated more simply, a drop of ink cannot be removed from a glass of milk." *Id.* (citation and internal quotation marks omitted). In this case, the judge made it clear that she would be guided by the plea agreement, and not by the government's noncompliant sentencing memorandum, and we have no reason to question her assurance, especially in light of her rebuke of the prosecutor. Nevertheless, the judge had read what she had read and had heard what she had heard, and the combination of what the prosecutor wrote and what the prosecutor said could hardly have left the judge in doubt that the level of the prosecutor's commitment to the plea agreement was quite modest. As Judge Wilkey wrote for the court in *United States v. Walker,* 154 U.S.App.D.C. 6, 8, 473 F.2d 136, 138 (1972):

> The [trial judge] is presumed to have a trained and disciplined judicial intellect, which in a nonjury trial can receive evidence, rule on its admissibility, and discard from his eventual decision on the merits that evidence which he has ruled to be inadmissible for the purposes of his decision. This mental discipline is supposed to be part of the resources which the trial judge brings to his task. . . .

Nevertheless, the court added

> [T]he disciplined judicial mind should not be subjected to any unnecessary strain; even the most austere intellect has a sub-conscious.

*Id.*

If the contentions now being made by Clark in this court had been presented to the trial judge, a request that the sentencing be conducted before a different judge, who would have been unaware of the prosecutor's improper recommendation in her sentencing memorandum, would not have

---

6. We note, however, that but for the government's initial breach, the prosecutor's comment that a ten-year sentence would be generous would not have been improper. *See, e.g., Johnson v. United States,* 30 A.3d 783, 787–88 (D.C.2011).

been unreasonable.[7] As we have explained in our presentation of the facts, however, no such request was made.

## III.

■ At the outset of the sentencing proceeding, the judge invited counsel's attention to the surprising (to her, and to us) fact that in its sentencing memorandum, the government had asked for a sentence "twice what they had capped their allocution at." After the prosecutor agreed that the recommendation of a twenty-year sentence was "off the table," defense counsel asked rhetorically "if the government needs to actually submit another letter," because the proposal in the original memorandum violated the plea agreement. In response to a suggestion by the judge, counsel agreed that she was concerned that agencies responsible for making recommendations regarding parole might be influenced by the request in the initial memorandum that Clark be sentenced to imprisonment for twenty years. Counsel also indicated, as we have noted, that in her view, the government "should submit to the court and file in the jacket another letter in which they retract [the recommendation that Clark be sentenced to serve twenty years] and indicate that they're vigorously arguing for the sentence that they agreed that they would." When the judge also expressed the view that a new memorandum should be filed, but that sentencing should proceed immediately as scheduled, Clark's attorney responded: "Okay." Defense counsel agreed that nothing would be gained by delaying the imposition of sentence, "[a]s long as the record is corrected, Your Honor." Counsel likewise voiced no objection of any kind to the retention of the case by Judge Keary, or to the time or manner in which the judge proposed to proceed. She subsequently interposed no objection to the prosecutor's oral allocution.

■ It has been the law in this jurisdiction for more than a century that in the words of the former Supreme Court of the District of Columbia, "[a] party cannot be heard to complain in an appellate court of that which he has co-operated in doing in a lower court." *Evans v. Schoonmaker*, 2 App.D.C. 67, 71–72 (1893); *see also District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C.1993) (quoting *Evans*). "In general, parties may not assert one theory at trial and another on appeal." *Cowan v. United States*, 629 A.2d 496, 503 (D.C.1993) (quoting *Hackes v. Hackes*, 446 A.2d 396, 398 (D.C.1982)). The Supreme Court recently reiterated the applicable principles in *Puckett v. United States*, 556 U.S. 129, 134, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), a case arising out of the government's breach of a plea agreement:

> If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, his claim for relief from the error is forfeited. "No procedural principle is more familiar to this Court than that a ... right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 [64 S.Ct. 660, 88 L.Ed. 834] (1944).

In conformity with these principles, we have held that "[t]he judge must be fairly

---

7. We do not believe that on this record, taken as a whole, an impartial observer could reasonably discern an appearance of impropriety in the trial judge's actions or in her disposition of the case. *See* District of Columbia of Judicial Conduct Rule 2.11(A) 2012. Indeed, Clark does not argue to the contrary.

apprised as to the question on which she is being asked to rule," and that "[p]oints not asserted with sufficient precision to indicate distinctly the party's thesis will normally be spurned on appeal." *Salmon v. United States*, 719 A.2d 949, 953 (D.C. 1997) (citations, internal quotation marks, and brackets omitted).

Because Clark failed to object to anything that the trial judge said or did, or to the prosecutor's subsequent oral allocution, the judgment is subject to our review, if at all,[8] only for plain error affecting substantial rights. Super. Ct.Crim. R. 52(b); *Puckett*, 556 U.S. at 134, 129 S.Ct. 1423. On this record, in order to prevail, Clark would have to demonstrate that the trial judge committed plain error by failing to recuse herself, *sua sponte*, so that the case could be reassigned to another judge who would not be apprised of the recommendation made by the government in its initial sentencing memorandum.

 Clark has not made such a showing. In *Puckett*, 556 U.S. at 135, 129 S.Ct. 1423, relying on *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Court reiterated the four prongs of the plain error doctrine:

First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. [*Olano* ], 507 U.S. at 732–733 [113 S.Ct. 1770]. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. *See id.* at 734 [113 S.Ct. 1770]. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected

the outcome of the district court proceedings." *Ibid.* Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 736 [113 S.Ct. 1770] (quoting *United States v. Atkinson*, 297 U.S. 157, 160 [56 S.Ct. 391, 80 L.Ed. 555] (1936)). Meeting all four prongs is difficult, "as it should be." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, n. 9 [124 S.Ct. 2333, 159 L.Ed.2d 157] (2004).

In our view, Clark has not satisfied any of these prongs. He has not shown any legal error on the part of the trial judge, and, *a fortiori*, he has not demonstrated any error that was "clear" or "obvious." Given Judge Keary's approach to the issue, including, *inter alia*, her skepticism vis-à-vis the prosecutor, as well as the sentence that the judge imposed, Clark has not demonstrated that the judge's failure, *sua sponte*, to cause the case to be reassigned to another judge had any material effect on the outcome of the case. Finally, we do not believe that anything that the judge did or failed to do seriously affected the fairness, integrity or public reputation of the proceedings. In sum, Clark has not satisfied his very substantial burden under the plain error doctrine.

## IV.

In reaching the foregoing conclusion, we do not minimize the gravity of the government's initial breach, or the alarming potential of that breach for causing the defendant to serve ten years of unwarranted

---

**8.** Arguably, in light of defense counsel's affirmative expressions of agreement with what the trial judge did, Clark's claims on appeal have been waived altogether, and even review

for plain error is not required. We will assume *arguendo*, however, as does the government, that plain error standard applies.

additional imprisonment, in contravention of the plea agreement. We also emphasize that when such a serious violation of a plea agreement has occurred, it is our obligation to scrutinize the record with appropriate care in order to assure that even where, as here, the breach has been formally corrected, it will not have continuing consequences that may be contrary to the interests of justice. After having given the case the requisite scrutiny, however, we are satisfied that the trial judge committed no reversible error and that, in any event, the substantive claims presented by Clark on appeal have not been properly preserved. Accordingly, the judgment is

*Affirmed.*